UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80918-Civ-MARRA
MAGISTRATE JUDGE P.A. WHITE

LAWRENCE LEE JONES,                    :

    Petitioner,                     :

v.                                     :          REPORT OF
                                                  MAGISTRATE JUDGE
WALTER A. McNEIL,[1]                   :

    Respondent.                     :

_____

I. Introduction

Lawrence Lee Jones,[2] a state prisoner confined at Glades Correctional Institution at Belle Glade, Florida, has filed a pro se petition for writ of habeas corpus, challenging the execution or administration of his sentences. Jones seeks relief in the form of the setting aside of a disciplinary report and its removal from his institutional record. He also requests this Court to restore the loss of earned gaintime and to enter a declaratory judgment, finding the subject administrative rule unconstitutional.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

---

[1]Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

[2]This Court notes that Jones is no stranger to this Court, having filed at least fifteen pro se cases in this Court, challenging his convictions, sentences and conditions of confinement pursuant to 28 U.S.C. §2241, 28 U.S.C. §2254 and 42 U.S.C. §1983.

For its consideration of the petition, the Court has the respondent's response to an order to show cause with multiple exhibits.

## II. Claims

Jones alleges that his constitutional rights were violated in connection with disciplinary action taken by prison officials with regard to a disciplinary report issued on May 13, 2006. (Petition for Writ of Habeas Corpus, Under 28 U.S.C. 2254, By a State Prisoner Appealing a Disciplinary Report for Loss of Gain-Time)(DE# 1). Specifically, Jones raises the following claims in his petition: (1) the investigating officer improperly failed to initiate the disciplinary proceeding within twenty-four hours after the disciplinary report had been issued and the investigation did not start until May 16, 2006; (2) the investigating officer improperly failed to obtain the requested witness statements from Sergeant Williams and Officer Miller; (3) the disciplinary hearing team improperly failed to accept and consider his written statement which he submitted to the team at the hearing; (4) the disciplinary team improperly denied his request for live witness testimony and improperly failed to provide its reasons for the denial in writing; (5) the disciplinary team's finding of guilt was improperly based upon facts and charges outside those contained in the disciplinary report; (6) the disciplinary team improperly failed to provide an adequate statement to support the finding of guilt; and (7) the administrative rule governing his disciplinary charge, Rule 33-602.203(c), Fla.Admin.Code, is unconstitutionally invalid in that it is vague and overbroad and was unconstitutionally applied to him in that it allowed him to be disciplined for the use of a lawful chess board as a writing surface to prepare legal documents. Id. at 8-20.

III. <u>Procedural History</u>

The factual and procedural background of this case is as follows.[3] Records maintained by the Florida Department of Corrections indicate that Jones has been convicted in Broward County Circuit Court Case Nos. 80-03602 and 80-03713 of possession of burglary tools, kidnapping in the commission or facilitation of a felony and sexual battery with a weapon or force, and he is currently serving a sentence imposed on February 18, 1981, of ninety-nine years' imprisonment. <u>See</u> http://www.dc.state.fl.us. Jones is not due to be released from confinement until May 8, 2026. <u>Id</u>.

While confined at Glades Correctional Institution and housed in disciplinary confinement, Jones received a disciplinary report issued on May 13, 2006, charging him with violation code 0312, possession of contraband. <u>See</u> Charging Disciplinary Report. The charging officer, Officer Barrington Buckle, set forth the facts as follow:

> On May 13, 2006 at approximately 8:20 P.M., while on duty in Confinement conducting a routine search of cell F3109L, assigned to Inmate Jones, Lawrence DC# 077137, I found a chess board in his assigned locker. Inmates in disciplinary confinement are not allowed to have these items. Inmate Jones was in possession of contraband in the disciplinary side of confinement. The contraband was photographed, tagged as evidence and placed into the property room for disciplinary evidence pending the hearing of this disciplinary report. Inmate Jones is

---

[3]The procedural history of this case has been gleaned from records maintained by the Florida Department of Corrections, statements contained in the petition as well as exhibits filed by the respondent in support of his response to the order to show case. (DE# 1, 7). It is noted that the respondent's citation to the supporting exhibits do not appear to correspond to the exhibits as attached to the response.

charged with 3-12: Possession of Contraband.[4] Sergeant
E. Hernandez was present during the search.

Id. at 1. Jones was notified in writing of the charges against him
on May 16, 2006, and he was advised of all his rights in connection
with the disciplinary proceedings. Id. at 1-2.

An investigation of the charge was initiated on May 13, 2006,
and it concluded on May 16, 2006. See Disciplinary Report at 1.
(Exhibit A to Response to Court's Order to Show Cause filed in Leon
County Circuit Court Case No. 2006-CA-1959). During the
investigation, Officer Barrington was interviewed and he stated: "A
search was conducted of Inmate Jones and contraband was found in
the cell assigned to Inmate Jones. The contraband chess/checker
board game was found inside of his footlocker." Id. Officer E.
Hernandez provided a written statement in which he stated: "I was
present and saw Officer Buckle find the chess board inside inmate
Jones' assigned locker." (Witness Statement executed by Officer E.
Hernandez on May 16, 2006)(Exhibit E to Response to Court's Order
to Show Cause filed in Leon County Circuit Court Case No. 2006-CA-
1959). Jones was offered the opportunity to submit a witness
statement, and he stated:

> I was order[ed] to sign the Rules of confinement but never
> given a copy, as all other inmates in confinement unit. The
> contraband in question is an old checker or chess board that
> I use to write my legal work on, which stay[s] with my legal
> work. Officer Miller gave me all my legal work requested and
> the old checker board was in it. This was witnessed by Sgt.
> Williams, and the checker board can't be consider[ed]
> contraband under F.A.C. 33-.

---

[4]Section 3-12 of Fla.Admin.Code 33-601.314 makes possession of contraband
punishable by up to 15 days in disciplinary confinement plus loss of up to 30
days gain time. Contraband is generally defined as any article not sold in the
canteen, or issued by the institution, or for which the prisoner does not have
a  specific permit authorized by the institution where he is presently housed.
Section 3, Fla.Admin.Code. See also Rule 33-602.203, Fla.Admin.Code. Chapter 33-
602.222 provides the limited items permitted by inmates confined to disciplinary
confinement.

(Witness Statement executed by Jones on May 16, 2006)(Exhibit B to Response to Court's Order to Show Cause filed in Leon County Circuit Court Case No. 2006-CA-1959).

Jones was also given the opportunity to request documentary or physical evidence to present at the disciplinary hearing, and he requested the chess board, confinement rules, and Fla.Admin.Code. Ch. 33, Definition of Contraband. See Documentary or Physical Evidence Disposition. (Exhibit F to Response to Court's Order to Show Cause filed in Leon County Circuit Court Case No. 2006-CA-1959). Petitioner was further provided with the opportunity to request witnesses, and he requested Officer Miller and Sergeant S. Williams. Officer Miller and Sergeant Williams provided written statements, both stating: "I was not aware of I/M Jones having a board game in his possession while in/on disciplinary confinement status." See Witness Statements executed by Officer Miller and Sergeant Williams on May 17, 2006. (Exhibit D to Response to Court's Order to Show Cause filed in Leon County Circuit Court Case No. 2006-CA-1959).

Apparently, immediately before the hearing, Jones provided a second written statement and he requested the statement become part of the record. See Written statement to disciplinary team in my behalf. (Exhibit attached to Petitioner's Reply to Respondent's Response to Court's Order to Show Cause filed in Leon County Circuit Court Case No. 2006-CA-1959). Jones stated as follows in his later written statement:

1. I pled not guilty to possession of contraband.

2. Enclose[d] is a copy of confinement Rules which I was given upon being place[d] into confinement unit. Their (sic) is no rule that state[s], that I can not (sic) possess a game board to write on to do my legal work.

3.     Officer Miller took all my property from me, before I
       enter[ed] D/C confinement and inventoried it, and took
       out what I should not have on D/C confinement and gave
       me what property I could have, (and the game board was
       one of the items he gave me) to continue using to write
       on to do my legal work.

4.     I am requesting live testimony for (sic) Sgt. Williams
       who was present and talking to me, that I had no
       property with me, that C.O.I Miller had it, inventoring
       (sic) it, and brought me the property that I could have
       in D/C confinement.

5.     It should be noted that there was no chess or checkers
       with the board for entertainment purposes.

6.     Under F.A.C. 33-602.203 defined contraband and being on
       a confinement wing can't make the board contraband.

(emphasis supplied). Id. at 1-2.


       Jones appeared before the disciplinary team on May 18, 2006,
and after the charge was read and the procedures and penalties
explained, Jones entered a plea of not guilty. See Disciplinary
Report; Disciplinary Hearing Worksheet)(Exhibits A, I to Response
to Court's Order to Show Cause filed in Leon County Circuit Court
Case No. 2006-CA-1959). Jones declined the offer of staff
assistance, and requested witnesses were not called in that they
were "not required per inmate testimony. See Disciplinary Hearing
Worksheet. The witness statements were then read and considered at
the hearing, after which Jones was found guilty by the disciplinary
team of the charged violation for the following reasons: "Based on
Inmate Jones['] verbal and written statement[s] [that] the chess
board was being used by him as a writing surface. [This] meets the
definition of contraband as defined by 33-602.203(c)." Id.  As a
result of the finding of guilt, Jones received disciplinary
confinement for a period not to exceed ten days with a loss of
gaintime of thirty-days. Id. Jones was provided with a copy of the
Worksheet, indicating the team's action, and he was advised of his
right to appeal.  Id.

Jones then pursued his administrative and state court remedies, essentially appealing the decision on the grounds presented in this federal petition. Jones first submitted administrative appeals at the institutional level, and his various claims were thoroughly reviewed and then rejected as meritless, after investigation. See Request for Administrative Remedy or Appeal to Warden dated May 23, 2006; Response dated June 13, 2006, Request for Administrative Remedy or Appeal to Secretary, Florida Department of Corrections dated June 21, 2006; Response dated July 6, 2006. (Exhibit G to Response to Court's Order to Show Cause filed in Leon County Circuit Court Case No. 2006-CA-1959). Specifically, the Warden denied the grievance for the following reasons:

> In accordance with Chapter 33-602, any item or article that was neither issued nor authorized shall be considered contraband. Furthermore, Chapter 33-602 lists those items that an inmate is permitted to have in disciplinary confinement. A Chessboard is not among those items approved. Per FAC Chapter 33-602, Writers are available for the purpose of preparing correspondence. These boards are available in the confinement unit at the inmate's request. You are mistaken, per Chapter 33-601.304. The Investigating Officer shall initiate the investigation of the infraction within 24 hours of the writing of the disciplinary report. Policy does not state that an inmate must be investigated within 24 hours.
>
> Statements from your requested witnesses were obtained and read to you during your DR hearing. Both witnesses indicated that they had no knowledge that you were in possession of a chessboard. Your written statement was accepted and reviewed by the DR Team. You listed Sgt. Williams as a witness on your behalf on the DC6-112B Witness Disposition Sheet/Form and he provided a written statement. Per Chapter 33-601.306, Requests for an additional witness who are [sic] not listed on the witness request form will be granted if the inmate makes the request at the hearing. In no case shall a witness be called live or by written statement if his testimony would be irrelevant, immaterial or repetitive.
>
> The DR Team found you guilty based on your own admission to having the chessboard. Your rights under Wolff v. McDonnell were not violated. Further be advised that you were provided

7

with a copy of your hearing worksheet. A review of the sheet
was conducted and finds that there were no alterations made to
the sheet. The Hearing Officer corrected the error [regarding
the action taken] in your presence and informed you of such
during the hearing and then they initialed their names.

(Response dated June 13, 2006). The Secretary of the Florida
Department of Corrections denied the grievance, stating in
pertinent part that review of the response received at the
institutional level revealed that the review received appropriately
addressed the concerns raised and that Jones had not provided
sufficient information to warrant a dismissal of the disciplinary
report. (Response dated July 6, 2006). The response further stated
that, "The investigation does not have to begin with the inmate
being delivered a copy of the charges." Id.

Jones next filed a pro se Petition for Writ of Mandamus and
Petition for Declaratory Judgment with attached exhibits in the
Leon County Circuit Court, again challenging the disciplinary
process and the disciplinary team's determination that he had
violated institutional rules as charged in the disciplinary report
on essentially the same grounds raised in the instant federal
petition. See Petition for Writ of Mandamus and Petition for
Declaratory Judgment. (Exhibit attached to Response to Order to
Show Cause filed in the instant case)(DE# 7). Jones requested that
the disciplinary report be vacated and the report removed from his
institutional record. Id. The state filed a thorough response with
supporting exhibits, addressing each of the grounds raised by Jones
and concluding that Jones was not entitled to the relief he sought,
because he had received appropriate due process at each stage of
the disciplinary proceeding and the disciplinary action was based
on constitutionally sufficient evidence. See Response to the
Court's Order to Show Cause. (Exhibit attached to Response to Order
to Show Cause filed in the instant case). Jones filed a reply in

8

opposition to the state's response with attached exhibits. See
Petitioner's Reply to the Respondent's Response to the Court's
Order to Show Cause. (Exhibit attached to Response to Order to Show
Cause filed in the instant case).

After full review of the record and consideration of the
applicable law, the trial court entered a well-reasoned order,
dismissing Jones' claim for declaratory judgment and denying the
petition as to all other grounds raised.   See Order Dismissing
Claim for Declaratory Judgment and Denying Extraordinary Relief.
(Exhibit attached to Response to Order to Show Cause filed in the
instant case). Specifically, the trial court stated in pertinent
part as follows:

> Regarding the propriety of the disciplinary action at issue,
> the court finds that [Jones'] due process rights were not
> violated. The standard of proof for a prison disciplinary
> hearing is "some evidence from which the conclusions of the
> administrative tribunal could be deduced." Superintendent,
> Massachusetts Correctional Institution v. Hill, 472 U.S. 445,
> 472, 105 S.Ct. 2768, 2774 (1985). The personal observation and
> report of Officer Buckles (sic) was sufficient. The hearing
> team sufficiently described the evidence on which it relied.

> Further, the record shows that Petitioner received all process
> due him under Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974)
> and Sandin v. Conner, 515 U.S. 472 (1995). Wolff provides that
> the process due an inmate in prison disciplinary proceedings
> is 1) advance written notice of the disciplinary charge; 2) an
> opportunity, where consistent with institutional safety and
> correctional goals, to present witnesses and documentary
> evidence in their defense; and 3) a written statement by the
> fact finder of the evidence relied upon and basis for the
> disciplinary action. Although states may create additional
> process, Sandin v. Conner, 519 U.S. 472, agency rules do not
> necessarily confer protectable liberty interests. See Hewitt
> v. Helms, 459 U.S. 460, 469 (1983) The role of the court when
> reviewing disciplinary proceedings is to determine whether the
> proceedings comported with due process. Where, as here, due
> process is met, any *de minimus* violations of agency rules
> which may have occurred will not result in judicial relief
> from agency action. See Black v. Warren, 134 F.3d 733, 734
> (5th Cir. 1998). Although [Jones] claims that he did not
> receive adequate notice because the disciplinary report did

not reference the specific rule under which he was charged, the court finds that the information contained in the disciplinary report's heading and statement of facts was sufficiently detailed to give the petitioner notice of the disciplinary charge.

Finally, [Jones] has failed to state a cause of action for declaratory relief. Although declaratory judgment may [be] used to challenge the constitutionality of a statute, its purpose is to "guide one's future action, not to secure a collateral determination as to the validity of a *past* conviction in another court or of plaintiff's past conduct." Duran v. Wells, 307 So.3d 259, 261 (Fla. 2d DCA 1975)(quoting Schildhaus v. Gilroy, 22 Misc. 524 (N.Y. 1959)). Because [Jones] has already been found guilty under a presumptively valid rule, no cause of action for declaratory judgment lies to challenge that rule. See id. at 262.

[Jones] has not stated a cause of action for declaratory relief. Therefore, [Jones'] request for declaratory relief is hereby **DISMISSED**. [Jones] has not shown that the Department violated due process, abused its discretion, or otherwise departed from the essential requirement of law. Accordingly, extraordinary relief is hereby **DENIED**.

(emphasis supplied). Id. at 3-4. The trial court's ruling was per curiam affirmed in a decision without written opinion. Jones v. Tifft, 961 So.2d 938 (Fla. 1 DCA 2007)(table).

IV. Threshold Issues -Timeliness, Exhaustion and Procedural Bar

    After all state court proceedings had concluded, Jones came to this Court instituting the instant petition for writ of habeas corpus, challenging on various enumerated grounds the subject disciplinary proceedings as violative of his due process rights. A state prisoner may seek federal habeas review of the loss of gain time as a result of a state prison disciplinary proceeding that allegedly violates his due process rights. Although Petitioner filed his petition pursuant to 28 U.S.C. §2254, his petition is governed by both §2241 and §2254. See Medberry v. Crosby, 351 F.3d 1049, 1063 (11 Cir. 2003)(holding that §2241 and §2254 apply to petitions for habeas corpus filed as §2241 petitions where the petitioner is "in custody pursuant to the judgment of a state

court."), <u>cert</u>. <u>denied</u>, 541 U.S. 1032 (2004). The respondent has filed a response to an order to show cause, in which he concedes that the petitioner has sufficiently exhausted all his administrative and judicial remedies with regard to the claims presented in this federal petition. 28 U.S.C. §2254(b),(c).[5] The respondent also rightfully does not challenge this petition as untimely filed pursuant to 28 U.S.C. §2244(d)(1)-(2). Accordingly, Jones is entitled to review on the merits of his claims.

## V. <u>Standard of Review</u>

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), the role of a federal habeas court when reviewing a state prisoner's petition pursuant to 28 U.S.C. §2254 is limited. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 403-404 (2000). Specifically, pursuant to §2254(d)(1), the writ may issue only if (1) the state court's adjudication resulted in a decision that "(1) 'was contrary to .... clearly established Federal law, as determined by the

---

[5]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert</u>. <u>denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). In Florida, if a prisoner challenges a disciplinary sanction imposed by the Department of Corrections, a state petition for habeas corpus or mandamus relief to the appropriate trial court is filed and, if unsuccessful, the prisoner seeks relief by filing a petition for certiorari review to the appropriate state appellate court. <u>See</u> <u>Havlicek v. State</u>, 804 So.2d 601 Fla. 5 DCA 2002)(prisoner filed petition for writ of habeas corpus asserting that Department of Corrections was without legal authority to forfeit gain time as a disciplinary punishment for his escape, and to forfeit gain time following his conviction for same escape); <u>White v. Moore</u>, 789 So.2d 1118 (Fla. 1 DCA 2001)(holding that Florida District Court of Appeal reviews by certiorari an order of the circuit court acting in its appellate capacity denying an inmate's petition for writ of mandamus, challenging a disciplinary sanction imposed by the Florida Department of Corrections); <u>Jones v. Florida Department of Corrections</u>, 615 So.2d 798 (Fla. 1 DCA 1993)(holding that appropriate remedy to seek review of order denying administrative appeal of a disciplinary report against prisoner is by petition for extraordinary relief in circuit court, and if petition is denied, prisoner may then seek review of the final order of the circuit court).

Supreme Court of the United States,' or (2) "involved an unreasonable application of .... clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 412-13 (quoting 28 U.S.C. §2254(d)(1)). Further, a federal court must presume the correctness of the state court's factual findings. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, 537 U.S. 870 (2002).

## VI. Discussion

An inmate can only claim a due process violation if the liberty interest he has lost is one of real substance. Sandin v. Conner, 515 U.S. 472, 478 (1995). Liberty interests grounded in the due process clause can only be created under certain limited circumstances. Since Sandin, only two instances exist where a prisoner can claim a protected liberty interest under the due process clause. Id. at 484. The first is when the prison's actions have the effect of altering his term of imprisonment, since any action that lengthens an inmate's sentence raises due process concerns. The second is where the prison's restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. The loss of gain time falls into the first category.

Regarding an inmate charged with an offense that would deprive him of good conduct time credit, it is well settled that he is entitled to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that his rights are not arbitrarily abrogated. Wolff v. McDonnell, 418 U.S. 539, 558 (1974). While minimal due process requirements must be met in prison disciplinary proceedings, the law does not afford a prisoner at a disciplinary hearing the full panoply of rights

that constitute due process for a criminal trial.[6] Id. Moreover, in cases where there is an actual loss of good time credits as a result of the disciplinary proceeding, federal courts will not review the sufficiency of the evidence at a disciplinary hearing; a finding of guilt requires only the support of some facts or any evidence at all to support the action taken by prison officials.[7] Superintendent v. Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454 (1985)(holding "that revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record"); Stewart v. Thigpen, 730 F.2d 1002, 1005-06 (5 Cir. 1984); Smith v. Rabalais, 659 F.2d 539, 542 (5 Cir. 1981), cert. denied, 455 U.S. 992 (1982). In sum, the disciplinary determination must not be arbitrary or capricious, but a reviewing court may not substitute its judgment for that of prison authorities. Stewart v. Thigpen, 730 F.2d at 1005; Smith v. Rabalais, 659 F.2d at 545.

The record as thoroughly set forth above reveals that Jones received written notice of the charge against him before the challenged disciplinary hearing. Jones was provided with the opportunity to call witnesses and submit witness statements at the hearing, and he was given the right to be assisted at the hearing

---

[6]Specifically, the prisoner must be provided the following minimal procedural due process: 1) advance written notice of the claimed violation; 2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and 3) an opportunity to call witnesses and present documentary evidence in defense, unless this would be unduly hazardous to institutional safety or correctional goals. Wolff v. v. McDonnell, 418 U.S. 539, 563-66 (1974). There is, however, no constitutional right to cross-examination or confrontation of witnesses in a prison disciplinary proceeding. Id. at 567-68.

[7]Under this standard, as long as there is a "modicum" of evidence or "any" evidence in the record to support the conclusion of the disciplinary body, its determination will be upheld. See Zavaro v. Coughlin, 970 F.2d 1148, 1148-49 (2 Cir. 1992).

by a staff member, which he elected not to do.  The record further reveals that during the investigation into the facts of the disciplinary report, individuals were interviewed and written statements obtained. The officer who issued the disciplinary report and an eyewitness officer were interviewed. Also, as requested by Jones, two other officers were interviewed whom Jones claimed had knowledge regarding the subject incident (i.e., Officer Miller and Sergeant Williams). These written statements provided by Officer Miller, Sergeant Williams, Officer Buckle, Officer Hernandez and Jones were reviewed and considered by the hearing team before making a finding on the disciplinary report. Although it is not clear from the record whether the disciplinary team received, reviewed and considered Jones' alleged second written statement, even if the team had not done so, Jones suffered no due process violation. The two statements were in material part virtually identical and consideration of the second statement by the team would not have resulted in a different outcome. Further, the record reveals that Jones was properly afforded ample opportunity at the hearing to assert his view of the charge and any defenses he might have had and he did so both verbally and in writing. See Spencer v. Fla.Dep't of Corr., 823 So. 2d 752, 754-55 (Fla. 2002)("[t]he disciplinary team gave the inmate prior notice and a hearing at which he was given the opportunity to rectify any mistakes and to argue as to what his sanction might be.").

It appears from review of the petition that Jones' real complaint regarding the investigating officer's failure to obtain written statements from Officer Miller and Sergeant Williams is that the investigator did not conduct the investigation in such a manner so as to obtain statements that were favorable to him, as he believed they should have been. Such a challenge is clearly frivolous. There is no requirement that the investigator ask

certain questions or conduct his investigation in a manner desired by the inmate. <u>See</u> <u>Wolff</u>, <u>supra</u>; Rule 33-601.305(e), <u>Fla.Admin.Code</u>.[8]

Jones' claim that the written witness statements of his two witnesses were not sufficient, and he was instead entitled to live testimony at the hearing, which he requested, must fail. First, it is noted that the record is not clear whether Jones in fact requested live witness testimony at the hearing from Officer Miller and/or Sergeant Williams.[9] However, even if so requested and denied, Jones' due process rights were not violated. The Due Process Clause gives inmates a right to call witnesses and present documentary evidence at a hearing that results in an extension of their incarceration time. <u>Wolff</u>, 418 U.S. at 566. However, prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary. <u>See</u> <u>Pannell v. McBride</u>, 306 F.3d 499, 502-03 (7 Cir. 2002), <u>citing</u>, <u>Forbes v. Trigg</u>, 976 F.2d 308, 317-18 (7 Cir. 1992). <u>See also</u> <u>Fla.Admin.Code</u> Rule 33-601.307(3)(b),(c).[10] As indicated, Jones listed two staff

---

[8]Rule 33-601.305(e) provides that the investigating officer shall ask the inmate if there are any witnesses or evidence to offer in the inmate's behalf.

[9]Jones stated in his second written statement that he requested live testimony from Sergeant Williams and Officer Miller. <u>See</u> Written statement to disciplinary team in my behalf. However, the Disciplinary Hearing Worksheet indicates that witnesses were not called in that they were "not required per inmate testimony. <u>See</u> Disciplinary Hearing Worksheet.

[10]<u>Fla.Admin.Code</u> Rule 33-601.307 provides in pertinent part as follows:

 (b) The routine presence of inmate witnesses during hearings would cause a disruption in the orderly operation of the facility, as it removes inmates from routine work assignments and programs.
 (c) The testimony of witnesses requested by the charged inmate shall be presented at the hearing through the written Witness Statement, Form DC6-112C, unless the inmate:
 1. Has completed and signed the witness request form during the investigation;
 2. Makes a request at the hearing for a witness to appear to

witness and written statements were taken from the two-named witnesses. The written statements were read and considered by the disciplinary team in arriving at the conclusion that Jones was guilty of the disciplinary infraction, as is specifically permitted by Rule 33-601(3)(c).[11]

Any implicit assertion by Jones that he has the right to attempt to impeach any information relied upon the disciplinary hearing team by live testimony is simply inaccurate. Prisoners are not entitled to cross-examination or confrontation at an administrative hearing. Hill, supra. Consequently, any claim which has at its base a claim that petitioner was denied the right to have a witness testify on his behalf must fail. See Hrbek v. Nix, 12 F.3d 777, 781 (8 Cir. 1993)("disciplinary actions may be taken-- and often they are--based only on a guard's [written] report"). Morever, even if this Court finds that Jones had in fact made a request for live testimony from the two subject officers who had been interviewed and provided written statements, such testimony would not have aided Jones' defense, as indicated by the written statements provided. There is no indication whatever in the record, or any reason to believe, that the officers would not have testified similarly to what they stated in their written

_____

provide live testimony; and
   3.  The disciplinary team or hearing officer determines that the reason provided by the charged inmate for requesting live testimony overcomes the burden on institutional staff caused by the retrieval and escort of live witnesses as well as the diversion of security staff from assigned posts due to the potential security risk that may result from the appearance of live inmate witnesses and the disruption to the assignments and activities of inmate witnesses.

[11]The rule provides in pertinent part that an inmate's request for live witness testimony at a disciplinary proceeding should be granted only when the disciplinary team or hearing officer determines that the reason provided by the inmate overcomes the burden on institutional staff caused by the diversion of staff members from their assigned posts and the security risk that may result. Here, given the contents of the written statements provided by Jones' requested witnesses, it is apparent that this threshold was not met.

statements. Accordingly, Jones did not have the right to call these officers as witnesses because they did not have any relevant or necessary testimony to present to the disciplinary hearing team. See Pannell v. McBride, 306 F.3d at 502-03, citing, Forbes v. Trigg, 976 F.2d at 317-18. Any denial by the disciplinary team would, therefore, have been proper and not violative of Jones' due process rights. Sandin v. Conner, supra.

Jones maintains that his due process rights were violated, because the investigation into the disciplinary violation was not initiated within twenty-four hours as required by Rule 33-601.305, Fla.Admin.Code.[12] The record reflects that the disciplinary report was issued on May 13, 2006, at 20:20 hours. See Charging Disciplinary Report. The final disciplinary report states that the investigation began on May 13, 2006, at 23:50 hours. See Disciplinary Report at 1. Therefore, the investigation was properly commenced within twenty-four hours of the writing of the disciplinary report. Jones apparently mistakenly believes that the investigation could not, or did not, commence until he received notification of the subject charges and received a copy of the disciplinary report, which did not take place until May 16, 2006, at 19:20 hours. As indicated in the grievance proceedings, an investigation does not have to wait until the inmate receives notification of the charge. The applicable rule makes no mention of any such requirement or prohibition. See Rule 33-601.305, Fla.Admin.Code.

Moreover, the record demonstrates that the fact-finders' conclusion was neither arbitrary nor capricious and there was at

---

[12]Rule 33-601.305 states that "[t]he investigating officer shall initiate the investigation of the infraction within 24 hours of the writing of the disciplinary report." The rule further sets forth in detail the various responsibilities of the investigating officer.

least some facts and evidence to support the finding of guilt and
resultant loss of gain time credits and disciplinary confinement.
As indicated, the disciplinary team's decision was based upon
Jones' own statements, admitting possession of the subject item and
unauthorized use, which admission indicated his failure to comply
with prison rules and regulations (i.e., possession of contraband).
See Fla.Admin.Code Rule 33-601.314, Section 3-12. The disciplinary
hearing team also had before it the reporting officer's report and
written statement as well as a written statement from Officer E.
Hernandez who stated that he had been present during the routine
search of Jones' cell and he had seen Officer Buckle find the chess
board inside inmate Jones' assigned locker. In accordance with
Chapter 33-602, which lists the items an inmate is permitted to
have in disciplinary confinement, any item or article that was
neither issued nor authorized was deemed contraband. A chessboard
was not among the limited items approved. See Chapter 33-602.222,
Fla.Admin.Code. Thus, the discipline hearing team's finding that
Jones was guilty based on Jones' admissions that he possessed the
chess board and was using it as a writing surface and other
evidence obtained during the investigation did not constitute an
arbitrary and capricious exercise of the team's discretionary
disciplinary function sufficient to give rise to a claim by Jones
of a constitutional violation. See Smith v. Rabalais, 659 F.2d at
545-46. There is clearly sufficient evidence to support the finding
of guilt. Superintendent v. Hill, 472 U.S. 445, 455 (1985). See
also Hrbek v. Nix, 12 F.3d at 781. In the instant case, the
disciplinary actions comported with due process and did not offend
the constitution. The sanctions imposed for violation of the
institutional rules was also proper under the circumstances. See

18

Rule 33-601.314 (3-12), Florida Administrative Code.[13]

Jones also challenges the disciplinary proceedings on the ground that the rules of the Florida Administrative Code regarding contraband are unconstitutionally vague and/or overbroad. The void-for-vagueness doctrine is linked to the Due Process clause of the Fourteenth Amendment. Generally, the doctrine is rooted in notions of providing "fair notice and warning" to citizens of what any particular legislation prohibits or allows. See Chad v. City of Ft. Lauderdale, 66 F.Supp.2d 1242, 1244 (S.D.Fla. 1998). The doctrine requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact to prevent "arbitrary and discriminatory enforcement." Id., citing, Smith v. Goquen, 415 U.S. 566, 572-73 (1974). "Reasonably clear" does not, however, require that every law be so crystal clear as to preclude every single vagary or difference of opinion regarding enforcement under any scenario. Id. Rather, "reasonably clear," in the due process context means simply that the people must be informed as to what the State commands or forbids so that a person of ordinary intelligence can gear his behavior accordingly. Id. at 1244-45. See also Kolender v. Lawson, 461 U.S. 352, 357(1983)(stating that the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement). Courts should remain ever mindful that "general statements of the law are not inherently incapable of giving fair and clear warning."

---

[13]Fla.Admin.Code Rule 33-601.314, entitled, "Rules of Prohibited Conduct and Penalties for Infractions," sets forth a table showing the established maximum penalties for indicated offenses. Specifically, Section 3-12 refers to possession of contraband. The rule provides that the maximum disciplinary action for a violation of Section 3-12 is 15 days in disciplinary confinement with a loss of 30 days of good time credit. Id.

<u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997). "Due process requirements are not 'designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.'" <u>Id</u>. at 271 (quoting <u>Colten v. Kentucky</u>, 407 U.S. 104, 110 (1972)). No matter how clear legislation may be, the legislation may still be unconstitutional if it prohibits constitutionally protected behavior. <u>See Chad</u>, 66 F.Supp.2d at 1245-46 and cases cited therein.

In this case, the administrative rules in question are sufficiently clear to allow a person of normal intelligence to understand the type of conduct that is being prohibited. That is especially true because due process requires less exactitude in statutes that lack criminal sanctions. <u>Ross v. City of Orlando</u>, 141 F.Supp.2d 1360 (M.D.Fla. 2001). Jones essentially contends that because the rules regarding contraband do not specifically include a chess board as a prohibited item and because he had obtained the offending material lawfully and prisoners were able to possess the subject item, he did not know that possessing the chess board in disciplinary confinement was prohibited. This contention is unavailing. Rule 33-602.203(c) clearly provides that contraband includes, "[a]ny item or article which is altered from its original design or is being used for a purpose other than that for which it was designed or authorized." Here, the chess board was being used as a writing table, therefore, under the circumstances in this case, it was properly deemed contraband. Ordinary prisoners can understand what is meant by "altered" and/or "used for a purpose other than that for which it was designed or authorized."

Further, contraband also includes: "Any other article,

instrument or substance specifically prohibited by the policies and rules of the institution." Rule 33-602.203(3)(f), Fla.Admin.Code. The chessboard was a prohibited item while housed in disciplinary confinement. The rules regarding personal property for inmates confined to disciplinary confinement are clear. Rule 33-602.222, Fla.Admin.Code pertains specifically to disciplinary confinement and provides in pertinent part as follows with regard to the limited permissible personal items that may be retained while housed in disciplinary confinement:

> (c) Personal Property. Inmates in confinement shall be allowed to retain stamps, eyeglasses, hearing aids, personal watches, and rings unless there is an indication of a security problem. If removal of any item in the inmate's possession is determined necessary, the correctional staff shall document their actions on the DC6-229, Daily Record of Segregation, which shall be approved by the chief of security. The correctional staff shall issue the inmate a receipt for her or his confiscated items by completing the Inmate Impounded Personal Property List, Form DC6-220. Form DC6-220 is incorporated by reference in subsection 33-602.220(10), F.A.C Inmates in disciplinary confinement shall not possess any products that contain baby oil, mineral oil, cocoa butter, or alcohol.

> (d) Comfort Items. Inmates in confinement shall be afforded, at a minimum, the following comfort items: toothbrush, toothpaste, bar of soap, towel (or paper towels), toilet tissue, and feminine hygiene products for women.

> *          *          *

> (g) Canteen Items. Inmates shall be prohibited from purchasing canteen items while in disciplinary confinement. However, non-indigent inmates shall be allowed to purchase stamps, envelopes, security pens and paper for preparation of legal documents, including inmate grievances, and for mail to notify visitors of his or her confinement status.

It is beyond dispute here that even if the chessboard was an item that could lawfully be purchased at the canteen and was permitted while confined in the general prison population, as Jones maintains, it was not such a permissible item of personal property

that could be possessed while housed in disciplinary confinement. In other words, Jones improperly retained the chess board when transferred to disciplinary confinement. The chessboard was clearly contraband. Thus, how Jones may have initially acquired the subject item and the fact that he could retain the item while not in disciplinary confinement is irrelevant, as found in the prison administrative grievance proceedings. The subject prison regulations regarding contraband were not vague and the regulations were properly applied to Jones. Jones' apparent assertion that, although he signed a copy of the Rules of confinement, he was unaware of the specific prohibitions pertaining to disciplinary confinement because he was not provided with a copy of those regulations before his confinement, as he should have been, is specious not to mention wholly conclusory without any substantiation whatever in the record except for Jones' own self-serving allegation.[14]

Also, the rules regulating contraband are not overbroad because they do not apply to conduct that is protected by the First Amendment. Here, the issue was Jones' possession of a prohibited item not the prohibition of an item to assist him with preparing legal materials. As indicated in the grievance proceeding, Jones

---

[14]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his <u>pro</u> <u>se</u> petition to be of probative value. <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011-12 (5 Cir. 1983). Moreover, even if this Court were to accept as true Jones' assertion that he did not receive a copy of the pertinent prison regulations this particular time that he was transferred to disciplinary confinement, Jones has been confined since 1981, he is currently housed in close management, and this was not the first time he has been housed in disciplinary confinement. In fact, he has challenged his disciplinary confinement in earlier civil rights cases filed in this Court. <u>See</u> <u>e.g.</u>, <u>Jones v. Dubois</u>, No. 96-cv-14182-KMM. His claim that he was unaware of the particular rules and regulations of disciplinary confinement is, therefore, not credible.

could have obtained a writing table, if needed.[15]   No First Amendment protection is implicated here. Even if such rules could be construed to implicate First Amendment protection, Jones is not entitled to relief. While it is well established that inmates do not forfeit all of their constitutional protections by reason of their conviction and confinement in prison; <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979), a prisoner's constitutional rights are subject to limitations and restrictions. <u>Id</u>. at 546.   Specifically, a prisoner's exercise of First Amendment freedoms may be curtailed when, in the informed judgment of prison officials, such exercise poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment." <u>Jones v. North Carolina Prisoners' Labor Union</u>, 433 U.S. 119, 132(1977). The subject prison rules clearly involve institutional order and security, legitimate goals of penal institutions, warranting any restriction on Jones' constitutional rights. Again, Jones' contention that the chessboard should not have been deemed contraband because the item itself was not unlawful or being used for a prohibited purpose is meritless.

## VII. <u>Conclusion</u>

In the instant case, the state trial court, citing the Supreme Court's decisions in <u>Wolff</u>, <u>Hill</u> and <u>Sandin</u>, denied the mandamus petition after finding that Jones had failed to state sufficient allegations that his due process rights were violated in any way. His petition for certiorari was subsequently denied by the Florida First District Court of Appeal without explanation. <u>See</u> <u>Jones v. Tifft</u>, 961 So.2d 938 (Fla. 1 DCA 2007)(table). Because it has clearly been determined that §2254(d) is a restriction on habeas petitions of prisoners in custody pursuant to a state judgment, and

---

[15]Inmates housed in disciplinary confinement with disabilities that hinder the preparation of legal correspondence are allowed the use of auxiliary aids, such as a writer/reader. See <u>Fla.R.Admin.Code</u> 33-602.222(4)(k)2.

here, because the merits of Jones' claims were adjudicated in the state courts, <u>Medberry</u> requires that review be restricted to whether the state court's application of clearly established federal law was unreasonable. <u>See</u> <u>Medberry v. Crosby</u>, 351 F.3d 1049, 1054 n.5 (11 Cir. 2003) <u>See also</u> <u>Tedesco v. Secretary for Dept. of Corrections</u>, 2006 WL 1761322, *4 (11 Cir. June 26, 2006).

Based upon the record in this case and applicable caselaw, the subject disciplinary action comported with due process and did not offend the constitution. Accordingly, the state trial court's disposition of Jones' mandamus petition, which ruling was affirmed by the state appellate court, was neither objectively unreasonable nor contrary to clearly established federal law. In other words, the rejection of Jones' due process challenges to the disciplinary proceeding, resulting in the loss of gaintime, is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and the results in the administrative review process and proceedings before the state courts should not be disturbed.[16] 28 U.S.C. §2254(d)(1). <u>See also</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

It is, therefore, recommended that this petition for habeas corpus relief be denied.

---

[16]The state appellate court's rejection, without discussion, of Jones' claims presented in the certiorari proceeding constitutes an "adjudication on the merits," and is thus entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA) for purposes of subsequent federal habeas corpus review, even though the state court did not issue an opinion providing any discussion with respect to his claims. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002). Jones is only entitled to relief if the state appellate court's rejection of his claims was directly contrary to, or was an unreasonable application of, clearly established federal law. <u>Id</u>. at 1253-56. <u>See also</u> <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1325 (11 Cir. 2002). For the reasons stated herein, the appellate court's decision affirming the trial court's ruling in the mandamus proceeding on the subject issues was not unreasonable, and Jones is therefore not entitled to relief in this federal proceeding.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 29th day of April, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Lawrence L. Jones, <u>Pro</u> <u>Se</u>
     DC# 077137
     Glades Correctional Institution
     500 Orange Avenue Circle
     Belle Glade, FL 33430-5222

     Joy A. Stubbs, AAG
     The Capitol, Suite PL-01
     Tallahassee, Fla. 32399-105